WILLIAM RICE & another *vs.* WILLIAM C. CODMAN & another.

A purchase of goods which are designated and set apart by the seller, and paid for, and a part of which are actually removed by the purchaser's order, is sufficient to vest the property in the purchaser, as between the parties, although he has never seen the goods.

A bill of sale of gunny cloth, specifying the invoice weight, is not a warranty that the actual weight is substantially the same with the invoice weight; and evidence that such is the understanding among dealers in that article in Boston is inadmissible.

CONTRACT. At the trial in the superior court, it appeared that, on the 18th of August 1858, the plaintiffs purchased of the defendants a quantity of gunny cloth, respecting which the two following papers were executed:

32*

" Boston, August 18 1858. Sold to William Rice & Co., for account of William C. Codman & Co., one hundred bales of gunny cloth, invoice weight $2\frac{15}{100}$ lbs. average per yard; to be of merchantable quality and condition. Price, $15\frac{1}{4}$ cents per yard, less $3\frac{1}{2}$ per cent. for cash. Thomas Perkins, Jr., broker for the parties."

" Boston, August 18 1858. Messrs. William Rice & Co., Bought of William C. Codman & Co. — 100 bales of gunny cloth, containing 35,553 yards, at $15\frac{1}{4}$ c. $5421.83. Cash : Received payment, William C. Codman & Co., by Robert H. Stevenson."

To the latter paper a specification was annexed, showing in detail the number of yards and the number of pounds in each bale, as per foreign invoice, by which it appeared that the whole number of yards was 35,553, and the total weight was 76,577 pounds.

At the time of making and delivering the above papers, the goods were in a warehouse in East Boston, where they were kept in the name of the defendants, and the plaintiffs never saw the same ; but it appeared that the specification was a true copy of the original invoice, and the plaintiffs testified that at the time of the purchase they understood it to be so, and that in the usual course of business the cloth is never measured, and only a portion of the bales is ever weighed, and frequently none at all. On the 3d of September the plaintiffs sold twenty five of these bales, which were delivered upon their order by the defendants to the purchaser. On the 6th of September the plaintiffs bargained the rest to S. Cabot, and delivered to him an order upon the defendants for them, at the bottom of which the defendants wrote an order to the warehouseman to permit Mr. Cabot to weigh them ; and thirty bales were accordingly weighed by him, and fell short of the invoice weight forty pounds per bale on the average, and on this account he refused to complete the purchase or to receive the goods.

The plaintiffs contended that the language of the broker's note, " Invoice weight $2\frac{15}{100}$ lbs. average per yard," was a representation that its actual weight was substantially that, and was,

in fact, a warranty to that effect, and offered to show that such was the understanding among dealers in that article in Boston; but *Lord*, J. ruled that if, as appeared in evidence, the actual weight was sometimes above and sometimes below the invoice weight, and there was no fixed rule by which the former could be determined from the latter, the evidence was inadmissible; but he allowed the defendants to offer evidence of any usage by which the words "invoice weight" were held to mean the precise actual weight, or by which the actual weight could in all cases be determined from the invoice weight; but no such evidence was offered.

Upon the question of sale and delivery, the presiding judge ruled that the sale between the parties was complete, and vested the property in the plaintiffs; and that, as the property was thus sold and the title transferred, with no warranty of actual weight, the plaintiffs could not recover.

A verdict was returned for the defendants, and the plaintiffs alleged exceptions.

*W. Brigham*, for the plaintiffs.

*R. Codman*, for the defendants.

HOAR, J. The cloth purchased by the plaintiffs having been designated and set apart for their use, paid for, and a part of it actually taken away, and the rest of it being held subject to their order, we can have no doubt that the property had vested in them at the time the action was brought, and that their right to recover must depend wholly upon the breach of warranty alleged.

Assuming, then, as the plaintiffs contend, that the bill of parcels and the broker's note are to be taken together as constituting the contract, and that the representation of the weight of the cloth contained in them amounted to a warranty, the only question remaining is, whether the evidence offered to show the meaning of the terms used was competent and sufficient for that purpose. The broker's note contained the clause, "Invoice weight $2\frac{15}{100}$ lbs. average per yard." Annexed to the bill of sale was a specification, indicating the numbers affixed to the several bales; the number of yards in each bale, according to the for-

eign invoice; and the number of pounds in each bale, according to the foreign invoice. No objection is made that the specification did not give the weight of each bale, as it was stated in the invoice, correctly, and this " invoice weight" did average $2\frac{15}{100}$ lbs. to the yard; but the actual weight was considerably less than that shown by the invoice. The plaintiffs contended that this sale by "invoice weight $2\frac{15}{100}$ lbs. average per yard" was a representation that its actual weight was substantially that, and was, in fact, a warranty to that effect, and offered to show that such was the understanding among dealers in that article in Boston; but this evidence was rejected by the court.

We are aware of no principle of law upon which this evidence could be admitted. There is no doubt that it is competent to prove by parol that words used in a contract have, by commercial usage, a settled meaning different from their common and ordinary acceptation. But we do not understand the plaintiff's offer of proof to come within this rule. Their offer was not to prove that the words " invoice weight" mean, by commercial usage, actual weight, or that they mean anything else than their obvious purport of " the weight stated in the invoice." On the contrary, they asked to be allowed to prove, in effect, that it would be understood and expected by the dealers that the invoice weight would be substantially the same with the actual weight; or, in other words, that the defendants, by warranting that the cloth was described as of a certain weight in the invoice, warranted that the statement in the invoice was substantially true. This does not seem to us to be explaining the meaning of the terms used in the contract, but an attempt to give to the contract a force and effect which its terms do not warrant. When the meaning of the terms used in a written contract is ascertained, the effect and interpretation of the instrument are to be determined by the court as a matter of law, and cannot be changed or controlled by evidence of the understanding of the parties or of the community. *Hutchison* v. *Bowker* 5 M. & W. 535.                                    *Exceptions overruled.*